ROBERT L. BLAND, Judge,
dissenting.
Entertaining as I do certain pronounced and deepseated convictions with respect to the assertion, presentation and proof of claims against the state or any of its agencies, I am irresist-ably constrained to express my disapproval of the five several claims for which awards were made by a majority of the court in the above captioned cases, consolidated and heard together because they grow out of the same facts. Each of the said claims is predicated upon the alleged negligence of the state road commission in failing to anticipate and prevent an Act of God, and thereby avoid claim damages to five motor vehicles by reason of a sudden and heavy gust of wind that caused aluminum paint to be scattered in the air and deposited upon the motor vehicles of the several claimants in these combined cases. As appears from the majority opinion employes of the state road commission were engaged in painting the bridge more particularly described in said opinion. They were engaged in the exercise of a governmental function. Instead of having the several claims heard and defended in the court of claims under the regular procedure of the court act, the head of the agency concerned saw fit to send said claims to the court under the provisions of section 17 of said act, generally known and referred to as the shortened procedure. Under this procedure the head of the agency concerned prepares the record of the claim and files it with the clerk of this court together with a concurrence in such claim. Each of said claims if prosecuted in a court of law of the state would be held and treated as a tort action. From time immemorial since the birth of our great nation there have been claims against the sovereign commonwealths of the union with which each legislature has been called upon to deal, claims by the very nature of which were of a peculiar and distinct type and pecuniary in nature. It is a well and fundamentally recognized rule of law in each state of the union that a sovereignty cannot be sued without its consent. In West Virginia, however, we have a constitution which prohibits in any case the institu *79 tion of an action at law or in equity against the state of West Virginia, save in the instance of a garnishment proceeding. Ninety per cent of the claims with which the court of claims has had its dealing since its creation ten and one-half years ago have been claims against the state road commission. This is only natural when we reflect upon our extensive and magnificent system of highways in the state. In view of the numerous accidents that have occurred from time to time on the highways of the state there have been innumerable claims filed and prosecuted upon the theory of the state’s negligence in one way or another. One may examine the text books the country over and find that it is an elementary proposition that a state is not liable to respond in damages for the negligence of its officers, agents, servants and employes, in the absence of a prior statute authorizing the prosecuton of such claims. That fundamental principle of law has been distinctly recognized by our own Court of Appeals in the Adkins case and in other cases that have been heard in that august tribunal in mandamus proceedings against the auditor to compel him to pay requisitions made upon him which he had refused to pay. The only way, as a result of our appellate court’s holding, that a claim sounding in tort may warrant a valid appropriation by the legislature and for which the public funds may be paid, is on the theory of the moral obligation of the state. In no other instance would the legislature itself have power to make a valid appropriation to satisfy a claim in damages. Anyone who will take the trouble to read the several opinions of the Court of Appeals must reach this inevitable conclusion. What constitutes a moral obligation has been clearly defined by the Court of Appeals in the Cashman case and in other cases, all of which follow the rule laid down in the case of Woodall v. Darst, 71 W. Va. 350. However, in spite of these pronouncements of our Court of Appeals the head of the state road commission has submitted these cases, sounding in tort and predicated upon alleged grounds of his negligence, to this court with his concurrence.
These several claims have been informally considered by this court upon the meagre record made and filed before the clerk of this court by the state road commission, thus depriving this *80 court of any independent inquiry or investigation as to whether or not one or more of the claims would constitute such a moral obligation of the state as our Court of Appeals has said it would be within the province of the legislature to make a valid appropriation. No defense whatever is made by the state against any one of the claims. This court is limited and restricted in its informal consideration of the claims to the facts set forth in the road commission record. Fortunately, however, it appears from the well-written opinion of the majority of the court that the primary and proximate cause of the damage claimed to have been sustained in each of the five cases is the result of an Act of God and not of any negligence that the state, as a sovereign commonwealth, could have anticipated and prevented. As far back as January 1942, a claim came to the court of claims from Berkeley county by a florist who sought an award against the state for the reason that while employes of the state were engaged in sweeping the dust from the highway of the state a heavy wind descended and spread the dust upon his flowers. I refer to case No. 38-S, Walter R. Kniceley, d/b/a Knicely Florists v. State Road Commission, reported in 1 Ct. Claims (W. Va.) 72. In our determination of that claim we held that the cause of the damage for which the claimant sought reparation was the result of an Act' of God, and that case has been a well established precedent of this court from that date until the present time. Even the majority opinion in these cases does not now disapprove or reverse that holding.
For reasons herein set forth and many more which fill my mind at the moment I most respectfully record this my dissent.